UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT M. OPER,

                              **Plaintiff,**

                    v.                                              **1:20-CV-1415**
                                                                    **(FJS/CFH)**
CAPITAL DISTRICT REGIONAL
OFF-TRACK BETTING CORPORATION;
PHIL GIORDANO; DEBORAH LAURANGE;
and ROBERT HEMSWORTH,


                              **Defendants.**
_____

APPEARANCES                                       OF COUNSEL

**LAW OFFICES OF WILLIAM G.**                     **WILLIAM G. GOTIMER, JR., ESQ.**
**GOTIMER, JR.**
2 Standish Road
Suite 206
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**JACKSON LEWIS P.C.**                            **VINCENT E. POLSINELLI, ESQ.**
677 Broadway
9th Floor
Albany, New York 12207
Attorneys for Defendants


**SCULLIN, Senior Judge**


## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

        Plaintiff commenced this action against Defendant Capital District Regional Off-Track

Betting Corporation ("Defendant OTB") – his former employer – as well as against three of

Defendant OTB's employees – Defendants Phil Giordano, Deborah Laurange, and Robert Hemsworth (collectively referred to as the "Individual Defendants") – for terminating him for exercising his First Amendment rights and pursuant to New York's whistleblower statute. *See* Dkt. No 1, Compl., at ¶ 42.

Plaintiff started working for Defendant OTB in August 2019 as an Assistant Director of Communications and Technology; and, in that role, he was responsible for, "among other things, performing maintenance, installations and upgrades of network and other technology infrastructure at off track betting terminals maintained at bars, restaurants and other places of public accommodation[.]" *See id.* at ¶¶ 8, 10. As part of his responsibilities, Plaintiff visited approximately a dozen off-site terminals. *See id.* at ¶ 11. While at some of those locations, Plaintiff alleges that he witnessed "multiple instances of improper and dangerous electrical wiring." *See id.* at ¶ 12. Plaintiff alleged that he reasonably believed that those improper conditions violated the State Uniform Fire Prevention and Building Code ("the Building Code") and local building codes and regulations. *See id.* at ¶ 13.

Plaintiff further alleged that, on two other occasions, he participated in installing rooftop satellite dishes at various offsite locations; and, in those instances, he observed Defendant Giordano improperly install those satellite dishes in violation of the Building Code and local building codes and regulations. *See id.* at ¶¶ 17-19. In addition, Plaintiff claimed that he learned that Defendant OTB, at Defendant Giordano's direction, had been "illegally disposing of significant quantities of hazardous electronic waste," in violation of the New York State Electronic Equipment Recycling and Reuse Act (New York Env't Conserv. L. § 27-2611, hereinafter "EERRA"). *See id.* at ¶ 21.

According to Plaintiff, on various occasions from August 2019 through January 2020, he informed the Individual Defendants about these dangerous conditions and improper governmental actions. *See id.* at ¶¶ 10, 16, 20, 23. Nonetheless, on January 2, 2020, the Individual Defendants terminated Plaintiff, allegedly "without providing any basis for his termination other than that he 'had not completed the probationary period.'" *See id.* at ¶ 24. Plaintiff further alleges that, prior to his termination, he had never received any negative feedback, warnings, or other corrective actions related to his job performance; and, in fact, he was commended for his performance on multiple occasions. *See id.* at ¶ 25.

Finally, Plaintiff alleges that Defendants lacked any legitimate non-retaliatory basis for terminating him. *See id.* at ¶ 26. Thus, Plaintiff asserts in his first cause of action, brought pursuant to 42 U.S.C. § 1983, that the Individual Defendants violated his First Amendment rights and, in his second cause of action, that Defendant OTB violated New York Civil Service Law § 75-b. *See id.* at ¶¶ 27-42.

Defendants move to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 9. Notably, in support of their motion, Defendants attach a transcript of Plaintiff's testimony at a New York General Municipal Law ("GML") § 50-h hearing, in which they allege that Plaintiff conceded he did not have viable causes of action against them. *See* Dkt. No. 9-2, Ex. A, Pl's GML § 50-h Transcript; *see* Gen. Mun. L. § 50-h. Plaintiff opposes both Defendants' motion and their reliance on the hearing transcript. *See* Dkt. No. 13, Pl's Memorandum in Opposition.

## II. DISCUSSION

### A.  Motion to dismiss standard

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *LMC Indus. Contrs. v. Dominion Energy Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS 159441, *3 (N.D.N.Y. Aug. 24, 2021) (Scullin, S.J.) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)).  However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted).  As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929).  Therefore, under this standard, a plaintiff must support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).  Thus, if the plaintiff has not "'nudged [his] claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint.  *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

### B.  Plaintiff's first cause of action for First Amendment retaliation against Defendants Giordano, Laurange, and Hemsworth

As an initial matter, the parties dispute whether, in considering Defendants' motion to dismiss, the Court should consider Plaintiff's testimony at his GML § 50-h hearing.  "[T]he

great weight of authority on this issue establishes that courts generally may not consider 50-h examination transcripts" in deciding a motion to dismiss "because they fall outside the four corners of the complaint." *Gurrieri v. Cnty. of Nassau*, No. 2:16-cv-6983 (ADS)(SIL), 2018 U.S. Dist. LEXIS 211204, *11-*12 (E.D.N.Y. Dec. 14, 2018) (collecting cases); *see J.H. v. City of Mt. Vernon*, No. 18-CV-4399 (CS), 2019 U.S. Dist. LEXIS 64692, *8 (S.D.N.Y. Apr. 15, 2019) (finding that "'[c]ourts in this circuit typically decline to consider 50-h testimony submitted by defendants when ruling on a Rule 12(b)(6) motion'" (quotation and other citation omitted)); *Shaw v. Rondout Valley Cent. Sch. Dist.*, No. 1:15-cv-00215 (MAD/TWD), 2015 U.S. Dist. LEXIS 165415, *11 (N.D.N.Y. Dec. 10, 2015) (D'Agostino, J.) (declining to consider a GML § 50-h hearing transcript on a motion to dismiss to the extent that it contained additional facts not alleged in the complaint (citation omitted)); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 273 (W.D.N.Y. 2014) (noting that, "[g]enerally speaking, a transcript from a 50-h hearing will be considered outside the four corners of the complaint" (collecting cases)). Plaintiff does not reference his GML § 50-h hearing testimony or cite to the transcript anywhere within his complaint; and, following the precedent that courts in this Circuit have set, the Court declines to consider Plaintiff's testimony from the GML § 50-h hearing in determining Defendants' motion to dismiss.

Turning to the substance of Plaintiff's first cause of action, "[t]o survive a motion to dismiss, a plaintiff claiming that he was retaliated against in violation of the First Amendment must plausibly allege that (1) he engaged in speech or activity that was protected by the First Amendment; (2) he suffered an adverse employment action; and (3) a causal connection existed between the adverse action and the protected activity." *Specht v. City of New York*, 15 F.4th 594, 599-600 (2d Cir. 2021) (citing *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir.

2015)).  "The speech of a public employee is protected by the First Amendment when the employee speaks as a citizen on a matter of public concern, rather than pursuant to his employment responsibilities."  *Id.* at 600 (citing *Garcetti* [*v. Ceballos*,], 547 U.S. [410,] 420-21 [2006]).  "This . . . inquiry in turn encompasses two separate subquestions: '(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke "as a citizen" rather than solely as an employee.'"  *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011) (citing *Garcetti*, 547 U.S. at 420-22)).  "Whether speech is on a matter of public concern presents a question of law that takes into consideration the content, form, and context of a given statement."  *Specht*, 15 F.4th at 600 (citing *Montero*, 890 F.3d at 399).  With respect to whether a public employee speaks as a citizen, the Second Circuit has explained that courts must ask the following two questions: "(A) did the speech fall outside of the employee's 'official responsibilities,' and (B) does a civilian analogue exist?"  *Matthews*, 779 F.3d at 173 (citing *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196, 203-04 (2d Cir. 2010)).  Notably, "[a] report to an external agency favors a finding that the complainant spoke as a citizen."  *Ahmad v. N.Y. City Health & Hosps. Corp.*, No. 20 Civ. 675 (PAE), 2021 U.S. Dist. LEXIS 62986, *93 (S.D.N.Y. Mar. 31, 2021) (citation omitted).

   As noted, Plaintiff brought his first cause of action against the Individual Defendants. "Personal involvement of the individual defendants 'in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Imperato v. Otsego Cnty. Sheriff's Dep't*, No. 3:13-cv-1594 (BKS/DEP), 2016 U.S. Dist. LEXIS 50155, *95 (N.D.N.Y. Apr. 14, 2016) (Sannes, J.) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))).  "Thus, '[i]n order to . . . "establish

individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right."'"  *Oliver v. N.Y. State Police*, No. 1:15-cv-00444 (BKS/DJS), 2020 U.S. Dist. LEXIS 73284, *147-*148 (N.D.N.Y. Apr. 27, 2020) (Sannes, J.) (quoting [*Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)] (citing *Back*, 365 F.3d at 122)); *see Impellizzeri v. N.Y.*, No. 5:17-CV-230 (FJS/ATB), 2021 U.S. Dist. LEXIS 199779, *20-*22 (N.D.N.Y. Oct. 18, 2021) (Scullin, S.J.).  Plaintiff must also show that the Individual Defendants had supervisory or decision-making authority to terminate him.  *See Knight v. Nassau Cnty.*, 852 F. App'x 42, 43 (2d Cir. 2021) (summary order).

In Plaintiff's first cause of action, he alleged that the Individual Defendants acted under color of state law in their capacities as Defendant OTB's employees.  *See* Dkt. No. 1 at ¶ 28. Plaintiff asserted that, in informing the Individual Defendants about the dangerous conditions and improper governmental actions, he was "speaking as a private citizen about matters of public and societal concern – including the health and welfare of the general public[,]" and his comments and concerns "fell outside the scope of his duties[.]"  *See id.* at ¶¶ 29-30. Specifically, Plaintiff was titled the Assistant Director of Communications and Technology and his duties included maintenance, installation, and upgrades to Defendant OTB's technology at its off-track betting terminals.  *See id.* at ¶¶ 8, 10.  Plaintiff was not a licensed electrician, and he alleged that his job duties never included reporting, repairing, or correcting dangerous electrical conditions.  *See id.* at ¶ 15.

Nonetheless, Plaintiff reported conditions he witnessed while at the off-track betting terminals, including "bare live electrical wires, uncovered junction boxes where electrical wires were joined, improperly grounded electrical wiring, and cable and other wires that were improperly run through drop ceilings without proper mounting."  *See id.* at ¶ 12.  Additionally,

Plaintiff explained that, as part of his job, he was "asked to participate in the installation of multiple rooftop satellite dishes at various offsite locations"; and, on two occasions, he observed Defendant Giordano "install satellite dishes on flat roof tops without a proper rubber pad or other proper foundation," in violation of the Building Code and other local building codes and regulations. *See id.* at ¶¶ 17-18. Plaintiff believed that this failure created a substantial and specific risk of injury to Defendant OTB's personnel and members of the general public "caused by roof collapse, falling equipment and/or other related and consequential hazards." *See id.* at ¶ 17. Plaintiff lastly complained that he learned that Defendant OTB, at Defendant Giordano's direction, "had been illegally disposing of significant quantities of hazardous electronic waste, including cathode ray tubes, computers, computer peripheral devices, small electronic equipment, and televisions" by disposing of them "with general garbage as ordinary solid waste." *See id.* at ¶ 21. Plaintiff admitted that he "learned of this practice when he was directed by [Defendant] Giordano to continue the practice of disposing of [Defendant] OTB's e-waste as ordinary solid waste." *See id.* Plaintiff also generally alleged that he "informed" the Individual Defendants of these violations and hazardous conditions. *See id.* at ¶¶ 16, 20, 23. However, Plaintiff did not allege that he reported those conditions to an outside agency, which, on its own, would have been strong proof that he was acting outside of the scope of his employment. *See Ahmad*, 2021 U.S. Dist. LEXIS 62986, at *93.

The Court considers each of these allegations in turn. First, with respect to the allegedly hazardous electrical wiring, Plaintiff discovered it while acting in his official capacity as Assistant Director of Communications and Technology, which required him to maintain, install, and upgrade technological infrastructure at various off-track betting terminals. *See* Dkt. No. 1 at ¶ 10. He would not have discovered the wiring and its problems if he had not been acting

within the scope of his employment.  Furthermore, although Plaintiff contends that he was not

an electrician and it was not his responsibility to report or repair hazardous conditions, he

admitted that he was responsible for maintaining the technology at off-track betting terminals,

which would presumably include reporting any hazards and issues with the physical

components of the technological devices in those terminals.

    Additionally, Plaintiff admitted that Defendant Giordano, as his supervisor and Defendant

OTB's Director of Communications and Technology, asked him to participate in installing

rooftop satellite dishes.  *See id.* at ¶¶ 3, 18.  He was therefore acting at the direction of his

supervisor and installing technological devices – as was part of his admitted job description –

when he discovered what he believed to be violations of the Building Code and local building

codes and regulations.  This is also true with respect to Plaintiff's involvement in e-waste

disposal.  Plaintiff admitted that Defendant Giordano, as his supervisor, directed him to dispose

of the e-waste, which would also fall within his admitted job description of maintaining

Defendant OTB's technology; and he did not learn of the alleged EERRA violations until he

was operating at Defendant Giordano's direction.  Therefore, the Court finds that Plaintiff was

acting within the scope of his employment when he discovered and reported each of the alleged

violations.  Based on these allegations, the Court finds that Plaintiff was acting pursuant to his

job duties and, thus, within the scope of his employment, rather than "as a citizen," when he

complained to the Individual Defendants about potential hazards and violations.  Accordingly,

the First Amendment did not protect Plaintiff's speech.

    In addition to the foregoing, the Court finds that Plaintiff has not alleged the Individual

Defendants' personal involvement in violating his constitutional rights sufficient to state a First

Amendment retaliation claim.  In his complaint, Plaintiff merely alleges that he "informed" the

Individual Defendants about the suspected violations and hazardous conditions and that, on January 2, 2020, the Individual Defendants terminated him without basis other than that he "had not completed the probationary period." *See* Dkt. No. 1 at ¶¶ 16, 20, 23, 24.  He does not elaborate as to how or when he "informed" the Individual Defendants of his complaints, the exact nature of his complaints, how or if the Individual Defendants responded to those complaints, or why he believes that he was terminated as a result of those complaints and not for the allegedly pretextual reason that he had not successfully completed the probationary period.  Thus, the Court holds that Plaintiff's allegations with respect to the Individuals Defendants' personal involvement are too conclusory, even when viewing all allegations as true, to show that they deprived Plaintiff of his First Amendment rights.

Finally, the Court finds that Plaintiff failed to show that any of the Individual Defendants had the authority to terminate his employment.  In his complaint, he identifies Defendant Giordano as the Director of Communications and Technology for Defendant OTB, Defendant Laurange as the "Director of Human Resources" at Defendant OTB, and Defendant Hemsworth as "General Counsel" for Defendant OTB.  *See id.* at ¶¶ 2-5.  Although a Director of Human Resources likely has authority to fire employees, it is unclear whether Plaintiff's direct supervisor or Defendant OTB's General Counsel have that authority.  Without clearly establishing the Individual Defendants' rights to terminate his employment, Plaintiff cannot succeed on his First Amendment retaliation claim.[1]

---

[1] The Court dismisses Plaintiff's First Amendment retaliation claim *without* prejudice.  *See Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) (citation omitted); *accord Bazadier v. McAlary*, 464 F. App'x 11, 12 (2d Cir. 2012) (summary order).  This provides Plaintiff with the opportunity to move for leave to amend his complaint to include additional factual allegations that, if true, would "'nudge[] [his] claims' . . . 'across the line from conceivable to plausible[.]'" *Iqbal*, 556 U.S. at 680 (quoting [*Twombly*, 550 U.S. at 570]).

### C. Plaintiff's second cause of action for violating New York Civil Service Law § 75-b against Defendant OTB

"Civil Service Law § 75-b prohibits a public employer from taking disciplinary action to retaliate against an employee for reporting 'improper governmental action.'"  *Matter of Kowaleski*, 16 N.Y.3d 85, 91 (2010) (quoting Civil Service Law § 75-b [2] [a]).  When a public employee is not subject to a collective bargaining agreement, "the employee may commence an action in a court of competent jurisdiction under the same terms and conditions as set forth in [N.Y. Labor L. art. 20-C]."  N.Y. Civ. Serv. L. § 75-b(3)(c)).  *But see Hurley v. Ithaca City Sch. Dist. – Bd. of Educ.*, No. 3:20-CV-0328 (DNH/ML), 2020 U.S. Dist. LEXIS 70689, *18 (N.D.N.Y. Apr. 22, 2020) (Lovric, M.J.), *adopted by* 2020 U.S. Dist. LEXIS 84935 (N.D.N.Y. May 14, 2020) (Hurd, J.).  "[I]n order to state a claim, a plaintiff must allege (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which []he reasonably believes to be true and which []he reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action." *Jones v. Town of Whitehall*, No. 1:13-cv-0806 (LEK/CFH), 2015 U.S. Dist. LEXIS 99234, *21-*22 (N.D.N.Y. July 30, 2015) (Kahn, J.) (citing N.Y. Civ. Serv. L. § 75-b(2)(a)).

With respect to his second cause of action, Plaintiff alleged that, at all relevant times, Defendant OTB was a "public employer," he was a "public employee," and the Individual Defendants were "Governmental Bod[ies]" under the Civil Service Law.[2]  *See* Dkt. No. 1 at ¶¶ 35-37.  According to Plaintiff, "between August 19, 2019 and January 2, 2020, [he] informed

---

[2] The Civil Service Law defines the term "Governmental body," in relevant part, as meaning "an officer, employee, agency, department, division, bureau, board, commission, council, authority or other body of a public employer . . . ."  N.Y. Civ. Serv. L. § 75-b(1)(c)(i).

Defendants Giordano, Laurange and Hemsworth that he suspected [Defendant] OTB had violated, or had directed him to violate, multiple laws, rules or regulations," including the Building Code and EERRA.  *See id.* at ¶ 38.  Plaintiff alleged that he "reasonably and truly believed" that those violations or hazardous conditions created a specific danger to the public health.  *See id.* at ¶ 39.  Nonetheless, Plaintiff asserted, he was "terminated for reporting what he reasonably and truly believed to be existing violations of state and/or local rules[.]"  *See id.* at ¶ 40.  Plaintiff also argued that, given the temporal proximity between when he "informed Defendants of these violations," and the "lack of any legitimate non-retaliatory reason for termination," his "decision to inform Defendants was the substantial motivating factor for [his] termination."  *See id.* at ¶ 41.

The Court finds that Plaintiff's complaint fails to satisfy the second element of a Section 75-b claim because he did not plausibly allege that he disclosed information about the alleged violations to Defendant OTB.  Plaintiff repeatedly asserted that he "informed" the Individual Defendants about the violations, but his complaint does not specify any information about those disclosures, such as whether he made them orally, in person, via email, or telephone.  He also failed to identify exactly what information he disclosed to the Individual Defendants, such as specifics about the improper electrical wiring or satellite installation, or whether those disclosures were more general.  Plaintiff did not explain the context in which he disclosed the violations, whether it was part of a performance review, in a report as part of his duties, in response to questioning, or on his own volition without prompting.  Other than generally alleging that he made the complaints between August 19, 2019, and January 2, 2020,[3] Plaintiff

---

[3] Notably, this time period is the entire length of Plaintiff's employment with Defendant OTB. *See id.* at ¶¶ 8, 24.

also failed to identify when he made the complaints, how many times he made them, to whom he made them, or where he made them. Therefore, the Court finds that Plaintiff's complaint, with respect to this claim, is too conclusory or generic to meet the minimum pleading requirements. *See Iqbal*, 556 U.S. at 678-81; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court also rejects Plaintiff's assertion that he has adequately alleged temporal proximity such that it would show causation for the same reasons, *i.e.*, that Plaintiff has not alleged when the disclosures occurred beyond identifying his four-month term of employment.[4]

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's complaint, *see* Dkt. No. 9, is **GRANTED**, and Plaintiff's complaint is dismissed **without prejudice**; and the Court further

**ORDERS** that, if Plaintiff decides to move for leave to file an amended complaint, he must do so within twenty (20) days of the date of this Order. If he does not file such a motion within the required time frame, the dismissal of his complaint shall become "with prejudice" without further Order of this Court; and, at that time, the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated:  December 22, 2021
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[4] The Court grants Defendants' motion to dismiss Plaintiff's second cause of action *without prejudice* to give Plaintiff the opportunity to move for leave to amend his complaint and include additional factual information supporting his second cause of action.